UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILKINS DANIEL MEJIA GIRON, | § § | CIVIL ACTION NUMBER 4:26-cv-00086 |
| Petitioner, | § § § | |
| versus | § § § | JUDGE CHARLES ESKRIDGE |
| KRISTI NOEM, *et al*, Respondents. | § § § | |

### OPINION AND ORDER ON DISMISSAL

Petitioner Wilkins Daniel Mejia Giron is a citizen of El Salvador who entered the United States without lawful permission in September 2025. Dkt 1 at ¶1. He was taken into custody by ICE on November 5, 2025. Ibid. He was then placed in removal proceedings. Id at ¶2. He is currently being held at the Joe Corley Processing Center in Conroe, Texas. Ibid. Respondents are sued in their official capacity as officers or employees of the United States and are collectively referred to as *the Government*.

Pending is a petition for a writ of *habeas corpus*, by which Petitioner challenges his detention without a bond hearing. Dkt 1. He asserts that he's entitled to a bond hearing under 8 USC §1226(a), which provides for discretionary detention during removal proceedings. See id at ¶¶30–33. He also contends that his detention violates the Due Process Clause of the Fifth Amendment. Id at ¶¶27–29.

Also pending is a motion by the Government for summary judgment. Dkt 8. It contends that no detention hearing is required because Petitioner is an "applicant for admission" under 8 USC §1225(b)(2)(A), which provides for mandatory detention during removal proceedings. Id at 7.

As noted in prior order, this action presents the same issue of textual interpretation recently addressed and resolved by the undersigned in *Montoya Cabanas v Bondi*, 2025 WL 3171331 (SD Tex); *Maceda Jimenez v Thompson*, 2025 WL 3265493 (SD Tex); see also *Montelongo Zuniga v Lyons*, 2025 WL 3755126 (ND Tex) (Hendrix, J). Counsel for Petitioner was so advised and responded to the *Montoya Cabanas* decision, in addition to other novel arguments not considered there. Dkt 9 (Petitioner response).

Upon due consideration, the undersigned maintains the ruling in *Montoya Cabanas*. The construction given 8 USC §§1225 and 1226 in that case thus controls here.

Petitioner maintains that because "mandatory detention without bond has *historically applied* to arriving aliens," "Congress's decision to define 'applicant for admission' broadly does not mean that every individual falling within that definition is subject . . . to §1225(b)." Dkt 9 at 4 (emphasis added). The argument in this regard depends upon assertion that §1225(b) is applicable only to arriving aliens "encountered at or immediately after a port of entry." Dkt 9 at 4. The position by Petitioner is thus rooted in the practice and priorities of past Administrations—not in the statutory text of §1225(b)(2)(A) itself. While "longstanding agency practice might have the 'power to persuade,' [ ] it has never had the 'power to control.'" *Restaurant Law Center v United States Department of Labor*, 120 F4th 163, 174 (5th Cir 2024). Agency practice can't "defeat a statute's text by 'adverse possession.'" Ibid, citing *Airlines for America v Department of Transportation*, 110 F4th 672, 676 (5th Cir 2024).

As noted in *Montoya Cabanas*, if Congress wanted to apply the mandatory-detention regime of §1225(b)(2)(A) only to arriving aliens, it could have said so, as it did with other closely related subsections. See §1225(a)(2) ("arriving alien who is a stowaway" isn't eligible to apply for admission); §1225(c)(1) (referring to situation where immigration officer or immigration judge "suspects that an arriving alien may be admissible"); §1225(d)(2) (titled with respect to authority "to order detention and delivery of

2

arriving aliens"). Instead, Congress chose to broadly define "applicant for admission" in §1225(a)(1), while providing that such individuals are subject to mandatory detention in §1225(b)(2)(A).

Petitioner also argues that the interpretation by the Government produces "absurd and unconstitutional results." Dkt 9 at 5. This is so, he says, because "a noncitizen apprehended years after entry" may be subjected to mandatory detention without a bond hearing under §1225(b)(2)(A), while noncitizens detained under §1226(c), some of whom have criminal convictions, are "entitled to individualized bond hearings after prolonged detention." Id at 5. But it is incorrect that aliens subject to detention under §1226(c) are entitled to individualized bond hearings, given that the text doesn't authorize bond at all. Instead, "§1226(c) *mandates detention* of any alien falling within its scope and [ ] detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings v Rodriguez*, 583 US 281, 305–06 (2018) (emphasis added). Regardless, the contention doesn't address, much less discount, applicability of the text of §1225(b)(2)(A) to the facts of Petitioner's situation. And notably in that regard, Petitioner wasn't "apprehended years after entry." See Dkt 9 at 5. Even on his own telling, he entered in September 2025 without inspection. Dkt 1 at ¶1.

The due-process claim by Petitioner also fails. He contends that his detention without bond redetermination violates due process. Dkt 1 at ¶¶27–29. The Supreme Court has stated, "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v Kim*, 538 US 510, 531 (2003) (citations omitted). As such, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id at 526. Petitioner's detention thus doesn't violate due process.

As such, the motion for summary judgment will be granted and the petition for writ of *habeas corpus* will be denied. Dkts 1 (petition) & 8 (motion).

\* \* \*

In so concluding, respectful acknowledgement is given to the six other district court judges in the Houston Division who have also recently reached the statutory issue presented in this case and determined under similar circumstances in favor of §1226 over §1225. For example, see *Ortega-Aguirre v Noem*, 2025 WL 3684697 (SD Tex) (Bennett, J); *Hernandez Lucero v Noem*, 4:25-cv-03981 (SD Tex, Oct 23, 2025) (Ellison, J); *Aslamov v Bradford*, 4:25-cv-04299 (SD Tex, Oct 30, 2025) (Hanks, J); *Mejia Juarez v Bondi*, 2025 WL 3684693 (SD Tex) (Hoyt, J); *Buenrostro-Mendez v Bondi*, 2025 WL 2886346, (SD Tex) (Rosenthal, J); *Espinoza Andres v Noem*, 2025 WL 3458893 (SD Tex) (Hittner, J). One other judge in the Houston Division has determined in favor of §1225. See *Villeda Cabriales v Noem*, 4:25-cv-04908 (SD Tex, Jan 22, 2026) (Lake, J). Another three judges in this Division haven't reached decision, but two have it currently pending before them. For example, see *Romero Moreno v Tate*, 4:25-cv-04903 (SD Tex) (Hanen, J); *Martinez-Sarres v Warden*, 4:25-cv-05273 (SD Tex) (Werlein, J).

That said, until the Fifth Circuit gives a definitive interpretation, it is simply up to each district court judge to give the text his or her own best reading. And in that regard, it's also noted that the Fifth Circuit has granted a motion to consider this issue on an expedited basis. See *Buenrostro-Mendez v Bondi*, 25-20496 (cited above, per Rosenthal, J), Dkt 80-2 at 2; see also *Covarrubias v Vergara*, 25-40701 (per Kazen, J, SD Tex, Laredo Division), Dkt 83-2 at 2.

If decision from the Fifth Circuit enters that is contrary to the ruling here and in *Montoya Cabanas v Bondi*, 2025 WL 3171331, (SD Tex), Petitioner may freely seek leave to file a motion for reconsideration on an expedited basis, if desired. Or he may initiate a separate petition.

\* \* \*

The motion by the Government for summary judgment is GRANTED. Dkt 8.

4

The petition for a writ of *habeas corpus* by Petitioner Wilkins Daniel Mejia Giron is DENIED. Dkt 1.

This action is DISMISSED.

This is a FINAL JUDGMENT.

SO ORDERED.

Signed on January 28, 2026, at Houston, Texas.

_____
Honorable Charles Eskridge
United States District Judge